[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on August 6, 1972, a total of 26 years. The Wife instituted this action claiming a dissolution of marriage, alimony, support, joint legal custody, an assignment of the marital estate, an equitable distribution of assets, counsel fees, and other relief. The Husband appeared pro se and filed no pleadings other than a financial affidavit and proposed orders. In a canvass by the court, the Husband indicated he was satisfied to represent himself.
Both parties are 47 years of age, in reasonably good health, and very well educated. During the marriage the parties moved many times in order to accommodate the Husband's career changes. Except for brief periods, the Wife was also employed during the marriage. CT Page 9041
Two children, Vanessa, date of birth September 22, 1983, and Stephanie, date of birth November 16, 1985, were born to the wife during the marriage. Both are in good health, although Stephanie has some congenital eye problems which need to be monitored. To their considerable credit, the parties were able to resolve custodial and visitation issues which were reduced to writing and placed on file. It is noted that both parties intended the language in the agreement relating to college education expenses to be a moral and not a legally binding obligation. Both parties appeared to be loving, caring parents.
It would serve no useful purpose to chronicle the causes for the marriage breakdown. The Wife claimed the breakdown occurred as a result of infidelity on the part of the Husband. The Husband, who admitted to numerous infidelities throughout the marriage, claimed the Wife was unresponsive to his needs. Suffice it to say, the Wife's position was more credible.
The court finds that residence requirements have been satisfied, and no family member is the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
The marriage is dissolved on the grounds of irretrievable breakdown.
Custody and Visitation
The parties shall have joint legal custody of the minor children with physical custody to the Wife. The Husband shall have reasonable rights of visitation in accordance with the agreement of the parties a copy of which is annexed hereto and labeled "Lessard Vs Lessard Visitation Agreement".
Alimony and Child Support
The Husband shall pay to the Wife, on the first day of each month, unallocated alimony and child support of $5,250 per month until the death of either party, remarriage of the Wife, her cohabitation as defined in Conn. Gen. Stat. Sec. 46b-86, or until December 31, 2005. On January 1, 2006, the unallocated order shall CT Page 9042 terminate and the Husband shall commence paying alimony of $4,000 per month until December 31, 2016, at which time alimony shall terminate. The above order is predicated upon a gross annual employment income of $180,000 for the Husband and $40,000 for the Wife. An unallocated order was selected because of the request of both parties to take advantage of tax laws.
Medical Insurance
The Wife shall provide medical and hospitalization insurance for the benefit of the two minor children as long as it is made available to her as an incidence of her employment. All unreimbursed medical, dental, orthodontia, psychiatric, psychological, nursing costs, and costs of prescriptive drugs for the minor children shall be shared equally by the parties.
Life Insurance
The Husband shall name the Wife beneficiary on $150,000 of life insurance insuring his life until he no longer has any financial responsibility to her for the payment of alimony. The Husband shall also name each minor child beneficiary on $50,000 of life insurance insuring his life. Proof of the proper maintenance of said insurance shall be furnished to the Wife upon request at least annually.
Real Estate
The marital residence located at 180 Hill Brook Lane, Fairfield Connecticut, shall be immediately listed for sale and sold to the buyer with the first reasonable offer. Net proceeds from sale, defined as gross selling price less balance on the first mortgage, brokerage commission, customary closing costs, and all liabilities listed on the Wife's financial affidavit (approximately $37,193.64), the American Express debt listed on the Husband's affidavit (approximately $9,400), shall be divided 60 percent to the Wife and 40 percent to the Husband. Any other debts owed by the parties shall be the responsibility of the party incurring same. Until sold, the Wife shall have exclusive use of the property and shall be solely responsible for the payment of mortgage, taxes and insurance as well as customary maintenance.
Personal Property
CT Page 9043
The parties shall equitably divide their furniture and personal possessions within 90 days from date. The court shall retain jurisdiction over the personal property until the division takes place. In the event no claim is made within the prescribed period, each party shall retain the items in their respective control without claim from the other.
The Wife shall retain the Lifemates, Inc. stock, her profit sharing plan, jewelry, the 1995 Jeep, and miscellaneous bank accounts. The Husband shall retain his IRA, computer, fax, 1991 Lincoln and miscellaneous bank accounts. The Husband shall also retain any interest he might have in The Lessard Group subject to any liabilities connected therewith including the Titan Financial Corporation debt.
Qualified Domestic Relations Order
The Husband shall, by way of a Qualified Domestic Relations Order (QDRO), transfer to the Wife 50% of his pension benefits at the General Electric Company. The Wife's counsel shall have the responsibility for the preparation and processing of the QDRO. Until approved by the plan administrator, the court shall retain jurisdiction.
IRS Tax Returns
By April 15 of each year, until there is no longer any financial obligation to one another, the parties shall exchange their complete IRS tax returns in order to insure that the payment of alimony and child support are appropriate under the circumstances then existing.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein.
Cutsumpas, J.
Lessard Vs Lessard
Visitation Agreement
General agreements: CT Page 9044
• Parents agree to act as advocates for each other with regards to the children's requests, and will consult with each other before making agreements with the children.
• Parties will be prompt in picking up, and returning children.
• Parties will call if running late or something comes up.
• Children can call parents any time.
• Parents calls to children will be kept reasonable when visiting opposite parent.
• The weekly schedule defined below resumes immediately following a holiday or vacation.
• If Barb needs child care during her days, she will give first consideration to Dan before making other arrangements.
• Parents are jointly responsible for college, including visiting prospective schools, decision making and financial. Parents will consult with each other and share information.
• This agreement will remain in place until each girl goes to college, after which the girls will reside with their mother until 21 and define their own visitation needs.
School Year
• Dinner on Wednesday 6-9 PM.
• Overnight every other weekend from 6 PM Friday to 9 PM Sunday.
Summer:
• Same as above, except Wednesday will be an overnight, from 6 pm Wednesday to 6 PM Thursday.
Primary Holidays:
Christmas:
• 1997-Dan will have the girls on Christmas Eve from 3 PM to 10 PM.
• 1998-Dan will have the girls on Christmas Day from 3 PM to 6 PM on CT Page 9045 the 26th.
• This schedule will alternate every year, as shown.
• Barbara will always have the girls overnight on Christmas Eve and on Christmas morning.
• This schedule takes precedent over the normal weekly schedule defined above.
Thanksgiving:
• Parties will alternate Thanksgiving: Dan will have 1998. Times will be arranged to include a 24 hour period.
• Thanksgiving cannot be combined with a vacation.
New Year's Eve:
• Parties will alternate New Year's: Barb will have 1998.
• New Year's Eve 2000 will be shared.
• New Year's may be combined with a vacation. Secondary Holidays:
• Include-Easter, July 4th, Memorial Day, Labor Day.
• Parties will select holidays each January. alternating selections with Barb always having first pick.
Vacation
• Each party will the opportunity for two vacations per year.
• 1 summer and 1 winter, each of which can be combined with a holiday, as defined above.
• Vacations will be kept to a 10 day duration, with time over 10 days to be discussed in advance.
• Before the children leave on vacation, parents must provide a written itinerary with the children's whereabouts each day, and a number where they can be reached. If this should change, parents agree to notify each other immediately, such that there will not be a 24 hour period CT Page 9046 where the children will be out of phone contact with the other parent.
Life Celebrations:
• These are defined as birthdays, religious events, school graduations, weddings.
• Parents agree that the primary celebration of the event will include both parents.
• Barb will consult with Dan before planning the event.
Minimum Time to Introduce Other People:
• Parties agree that they will not introduce the girls to another partner until one month after the divorce is final.
• Parties agree that they will not cohabitate with another partner with the girls present until 6 months after the divorce is final.
• These are minimum times.